Dear Treasurer Ellis Edwards,
¶ 0 The Attorney General has received your request for an official opinion asking, in effect:
1. Under the provisions of the Oklahoma Small Business LinkedDeposit Act, 62 O.S. 88.1-62 O.S. 88.9 (1988), what is theextent of the authority and duty of the Oklahoma Linked DepositReview Board concerning the approval or rejection of applicationsfor linked deposit loan packages?
 2. What is the extent of the authority of the State Treasurerregarding the approval or rejection of such loan packages?
 3. Is the Board subject to the provisions of the Open MeetingAct and/or the Administrative Procedures Act?
 4. What is meant by the language of 62 O.S. 88.4, which statesthat the State Treasurer may "issue guidelines in a mannersimilar to the Administrative Procedures Act"?
¶ 1 In 1988, the Second Regular Session of the Forty-First Oklahoma Legislature adopted into law, effective July 1, 1988, the terms of Senate Bill No. 475, creating the "Oklahoma Small Business Linked Deposit Act," to be codified at 62 O.S. 88.1
through 62 O.S. 88.9 (1988). The Act's terms are to be "administered" by the State Treasurer, acting in conjunction with the six-person Oklahoma Linked Deposit Review Board. 62 O.S.88.4(A) (1988). The Board is comprised of the State Auditor and Inspector, the Lieutenant Governor, the Insurance Commissioner, the State Treasurer, or their representatives, together with a representative from an Oklahoma banking institution appointed by the Banking Commissioner, and a representative appointed by the Governor. 62 O.S. 88.3(A) (1988).
¶ 2 In very broad terms, the Act authorizes the Treasurer to place certificates of deposit in private lending institutions at interest rates below those that he could otherwise obtain from willing institutions in arms' length transactions. The Act permits this action in return for the lending institutions' promises that they will make reduced-rate loans to eligible "small businesses," as that term is further defined, in the hopes of fostering economic growth in the State. You ask, at the Board's request, for clarification regarding the relationship between the Treasurer and the Board as to approval or rejection of loan packages authorized under this program, together with questions about the relationship of the Board and program to certain other state laws.
¶ 3 A full review of the Act's interrelated provisions indicates that the State Treasurer acts in two distinct manners in fulfilling his statutory duties regarding this program. First, he is the administrative officer for the Board, charged with a number of ministerial and limited or shared powers regarding the administration of the program. Second, as a member of the Board, he acts as an active participant in the full range of substantive and policy making functions of the Board.
 I.
¶ 4 The State Treasurer's administrative duties under the Act are quite specific. Under 62 O.S. 88.5 (1988), the State Treasurer is authorized to disseminate information and to provide "small business linked deposit loan packages" to lending institutions eligible for participation under the Act. In this regard, 62 O.S. 88.4 (1988) also states:
 A. The State Treasurer is hereby authorized to administer the Oklahoma Small Business Linked Deposit Program. The State Treasurer is further authorized to issue guidelines in a manner similar to the Administrative Procedure Act, 75 O.S. 250 et seq. of the Oklahoma Statutes.
 B. The State Treasurer shall take any and all steps necessary to implement the Oklahoma Small Business Linked Deposit Program and monitor compliance of eligible lending institutions and eligible participants, including the development of guidelines as necessary.
 C. The State Treasurer shall submit an annual report outlining the status of the Oklahoma Small Business Linked Deposit Program to the Governor, the Lieutenant Governor, the President Pro Tempore of the Senate and the Speaker of the House of Representatives.
¶ 5 An "eligible lending institution" is one that is eligible to make commercial loans, is a public depository of state funds, and agrees to participate in the linked deposit program. 62 O.S.88.2(2) (1988).
¶ 6 The "package" referred to in this section is a set of documents incorporating an eligible lending institution's overall program for making loans to eligible small businesses in the area in return for deposits of state monies with the lending institution at the lower rates authorized. A "package," which may cover one or more individual loans made through any eligible lending institution, ultimately must include information regarding the amount of the loan requested by each eligible participant, the number of jobs to be created or sustained and such other information regarding each business as both the Treasurer and the Board may require. 62 O.S. 88.5(E) (1988). The prospective borrower must certify on the loan application that the reduced rate loan will be used exclusively to create new jobs or preserve existing jobs and employment opportunities in accord with the purpose of the program. 62 O.S. 88.5(C)(2) (1988).
¶ 7 To be eligible to be considered to receive one of these loans, the requesting borrower must be an industrial park certified by the Department of Commerce as meeting the minimum guidelines necessary for an industrial park, or a small business that is organized for profit, is doing business in and from the State of Oklahoma, and employs not more than 200 employees or has gross annual receipts of not more than $4,000,000.00. 62 O.S.88.2 (1988). Numerous other restrictions on eligibility are set forth in 62 O.S. 88.5, but are not discussed here. The lending institution must certify, as part of the package, that the applicant is eligible to participate as requested, and must also certify the present borrowing rate applicable to the small business borrower. 62 O.S. 88.5(E) (1988).
¶ 8 Initially then, the State Treasurer, as the administrative officer for the program, is authorized, as per 62 O.S.88.5(E)'s terms, together with the Board, to require that certain information be provided by applicants for participation in the program. Further, he is empowered to disseminate these "packages" to eligible lending institutions, who, in turn, provide the appropriate documents to business entities eligible to receive small business linked deposit loans under the Act.
¶ 9 On receipt of these packages, eligible lending institutions are envisioned as utilizing them as lending tools available for their potential use, but only after the lending institution, itself, makes an independent business judgment as to the fitness of each loan proposal desired to be included in the state program. In so doing, the lending institution must apply all the usual lending standards to determine the credit-worthiness of the prospective borrower. 62 O.S. 88.5(C) (1988). The lending institution is also required to give priority to the economic needs of the area in which the business is located and other factors it considers appropriate to determine the relative financial need of the business. 62 O.S. 88.5(D) (1988). The maximum loan amounts that may be made under the Act are not more than One Million Dollars ($1,000,000.00) for an eligible small business and not more than Six Million Dollars ($6,000,000.00) for an eligible industrial park. 62 O.S. 88.5(C)(1) (1988).
¶ 10 Following this initial review, the lending institution forwards to the State Treasurer the small business linked deposit loan package. 62 O.S. 88.5(E) (1988). Upon receipt thereof, the Treasurer, again acting in an administrative function, must forward the loan package to the Board. 62 O.S. 88.5(F) (1988). In this regard, he is required to ministerially keep a chronological record of packages that are transmitted to the Board. 62 O.S. 88.5(F) (1988).
¶ 11 At this juncture, the State Treasurer's role as chiefly an administrative officer shifts temporarily, and he begins to function in the role of a member of the Board. The Board must review the package to determine if it is qualified for consideration under the Act, and must make a "recommendation" concerning the package within ten business days. Id. The Board's part in the program's administration and operation is also touched upon in 62 O.S. 88.3(B), where it states in pertinent part:
 B. The purpose of the Board shall to be to insure eligibility and compliance with the linked deposit program by lenders and applicants. The Board shall review applications and make recommendations for approval or rejection of a linked deposit loan package. In reviewing linked deposit loan applications the Board shall take into consideration the economic needs of the area in which the business is to be located and the number of jobs to be created or preserved by the receipt of such loan.
¶ 12 The Board, on taking such action, must then return the package to the Treasurer with its written recommendation of approval or rejection. Id. If rejection of the package is recommended, the Board must forward a copy of its "rejection notice" to the lending institution and the borrower. The Treasurer, once again wearing the mantle as the Board's administrative officer, keeps a list of applications "forwarded by the Board for approval or rejection." Id.
¶ 13 The package, back in the hands of the Treasurer, now undergoes a third review. At this stage, the Treasurer, as the administrative officer for the program, is required to determine whether there are sufficient funds available to make the desired deposit, and whether other related requirements have been met. Some of these functions are purely ministerial, while others entail the exercise of some discretion by the State Treasurer in implementing the program. The Treasurer, at any give time, may only deposit up to fifteen percent (15%) of all monies available to him, for investment in the program. 62 O.S. 88.8 (1988). All funds deposited pursuant to the Act's terms must be collateralized in the same manner as all other state funds that are deposited with state depository banks. 62 O.S. 88.9 (1988). Applications that are approved by the Board shall be subject to funds being available, and if a deposit cannot be made because of a lack of available funds, it must be made later in the chronological order of its approval. 62 O.S. 88.6(A) (1988). The Treasurer must reject any loan package if the borrower requesting the loan is not in good standing with the Oklahoma Tax Commission and the Oklahoma Employment Security Commission. 62O.S. 88.6(B) (1988).
¶ 14 Section 88.6(C) goes on to provide that upon "acceptance" of the small business linked deposit loan package or any portion thereof, the State Treasurer shall notify the Board, the lending institution and the borrower. He may place certificates of deposit with the eligible lending institution at up to three percent below the comparable Treasury Bill rate, as determined and calculated by the State Treasurer. When necessary, the State Treasurer may also place certificates of deposit with these lending institutions prior to acceptance of a small business linked deposit loan package. Upon the placement of a small business linked deposit with an eligible lending institution, the institution must fund the loan to each approved eligible participant listed in the small business linked deposit loan package in accord with the small business linked deposit agreement between the State Treasurer and the lending institution. The percentage rate of such loans must be reduced by at least the same number of percentage points that the certificate of deposit was reduced upon placement. The lending institution is required to certify to the Treasurer its compliance with this requirement. 62 O.S. 88.6(D) (1988).
¶ 15 You ask initially whether the Board has actual authority over the decision-making process employed in approving or rejecting a particular loan package, or part thereof, or whether the role of the Board is merely that of an advisory group to the State Treasurer.
¶ 16 This Act, in its evolution from its initial form as introduced in the Legislature to that which was finally adopted into law, underwent several significant changes. As introduced, Senate Bill 475 of the 1988 Legislature, in pertinent part, envisioned a five-member Review Board, the composition of which was to be substantially different than the final version's composition. Also different was the language of section six of the original Bill. Section 6(A) of Senate Bill No. 475, as introduced, read:
 The State Treasurer may accept or reject a small business linked deposit loan package or any portion thereof, based on the State Treasurer's evaluation of the eligible small businesses included in the package, the amount of individual loans in the package, the amount of the package and the amount of the funds available for linked deposit loans. If the State Treasurer recommends rejection, the written recommendation shall include reasons for rejection in a report to the Board. The Board shall forward a copy of the rejection notice to the lending institution and the borrower. The borrower may be allowed to bring his application into compliance with the standards of the Board and the State Treasurer and resubmit the application . . . In evaluating the eligible small businesses, the State Treasurer shall consider the recommendation of the Board, the economic needs of the area where the business is located and the number of jobs created.
¶ 17 This language, together with other language in the original version of the Bill, indicates that the original idea in effectuating this program was to place virtually all power regarding rejection or approval of any given loan package in the State Treasurer, with the Board being relegated to a role much more akin to an advisory one only. The final version of the Bill, however, included numerous Conference Committee amendments which were approved later by both houses. See Oklahoma State Senate Conference Committee Reports on Senate Bill No. 475 of the 1988 Legislature dated May 9, 1988, and May 17, 1988. The final version of the Bill indicates that this original format was replaced by the one passed into law, a format that contemplates a much more involved Board participation in these matters.
¶ 18 Similarly, a comparison of the final version of the Act with the terms of the "Oklahoma Agricultural Linked Deposit Program," adopted into law in 1987, leads to a similar conclusion. The Agricultural Linked Deposit Program, codified at2 O.S. 1761-2 O.S. 1769 (1988), involves a strikingly similar loan program to the one in question. A primary difference between the two sets of laws, however, is that under the Agricultural Program, language virtually identical to that quoted above from the original version of Senate Bill No. 475 was, in fact, codified into law. See 2 O.S. 1767(A) (1988).
¶ 19 Under this statute, the Treasurer may approve or reject proposed loan packages due to his own independent evaluation of the loans in question. Under 62 O.S. 88.6, his power, as an individual officer, is much more constrained. Deleted from that section is any language that envisions an independent review and determination by the Treasurer of approval of any particular loan package, or portion thereof. What is left is language outlining his numerous administrative duties. It is well settled that one may look to the legislative history of a Bill as an aid to determining legislative intent. Lekan v. P L Fire ProtectionDistrict, 609 P.2d 1289 (Okla. 1980); State ex rel. Dawson v.Dinwiddie, 95 P.2d 867 (Okla. 1939).
¶ 20 In this instance, a comparison of the terms of the statutory programs referred to above, together with a review of the terms and legislative history of Senate Bill No. 475, indicates legislative intent that the Oklahoma Linked Deposit Review Board does have substantive authority over the approval or rejection of linked deposit loan packages that is independent of the authority invested with the State Treasurer (taking into account, of course, the fact that the Treasurer does sit as a voting member of the Board). The Board has the legal authority to promulgate rules and regulations mandating information that must be provided by a prospective borrower to be considered to participate in the program. 62 O.S. 88.5(E) (1988). The Board further has the lawful authority and duty to make a substantive review of all loan packages tendered for consideration in the program, and to independently determine the suitability of any given package, or portion thereof, for such participation, within ten calendar days after receipt of each application for inclusion in the linked deposit program.
¶ 21 Should the Board reject any package or portion thereof, the Board must notify both the lending institution and the borrower of such rejection. Should the Board approve any package or portion thereof, the package is then transmitted to the Treasurer who has an additional duty, as the State Treasurer, to determine if sufficient funds are available to fund the package, and to see whether the borrower in question is in good standing with both the Oklahoma Tax Commission and the Oklahoma Employment Security Commission. If any of these final requisites are not met, the loan package or portion cannot be approved in final. Should a lack of current funding be the only objection, any loan packages in question are required to be funded at a later time, when funds are available, in the same chronological order as the packages were initially approved.
 II.
¶ 22 You next ask whether the Board is required to adhere to the requirements of the Oklahoma Open Meeting Act, 25 O.S. 301
(1981) et seq., and the Oklahoma Administrative Procedures Act,75 O.S. 250-75 O.S. 257 (1988), 75 O.S. 302-75 O.S.308 (1988). With reference to the Open Meeting Act, public boards that are supported in whole or in part by public funds, invested with the authority to oversee the expenditure of public funds, or the duty to administer public property are declared subject to its terms. 25 O.S. 304(1) (1988). The Board is such a public body and is subject to the full range of the Act's requirements. As to the Administrative Procedures Act, an "agency," as covered by that Act, includes any state board, with only a few exceptions not germane to your questions, that are set forth in 75 O.S. 250.4. The promulgation of a set of mandatory information that must be provided by prospective applicants who wish to participate in the program, and the criteria that will be used by the Board in reviewing loan packages as contemplated by62 O.S. 88.5(E) would constitute rule-making under the APA's definitions found at 75 O.S. 250.3 (1988). Therefore, the Board is subject to the requirements of the Administrative Procedures Act.
 III.
¶ 23 Your final question asks for clarification as to the true meaning of the language found in 62 O.S. 88.4(A) of the Small Business Linked Deposit Act which states that the State Treasurer is empowered to "issue guidelines in a manner similar to the Administrative Procedures Act." As set forth above, the State Treasurer acts in conjunction with the Board in administering this program, and acts in a real sense as the chief administrative officer for the Board and for the program. This section permits the State Treasurer, in implementing his executive and administrative duties in the program to do so by the issuance of guidelines in a manner similar to that which would be ordinarily required under the State's version of the Administrative Procedures Act, but not necessarily absolutely mirroring them.
¶ 24 This language does not permit the State Treasurer to wholly ignore the terms of the APA. He is required, in some fashion, to act similarly to the Act's requirements concerning prior public notification and opportunity to be heard, making cost-benefit analyses, filing copies of the promulgations with public record-keeping officials, and submitting the "guidelines" to the Legislature for review, and many other requirements. The State Treasurer's guidelines referred to in 62 O.S. 88.4 must be issued in manner that is similar with the APA's mandates.
¶ 25 It is therefore, the official opinion of the AttorneyGeneral that:
 1. Under the terms of the Oklahoma Small Business LinkedDeposit Act, 62 O.S. 88.1-62 O.S. 88.9 (1988), theOklahoma Linked Deposit Review Board has the lawful authority,relative to the approval or rejection of proposed linked depositloan packages, to promulgate mandatory informational requirementsthat must be adhered to by prospective participants in theprogram as set forth in the Act. The Board further has theauthority to substantively approve or reject any proposedpackage, or portion thereof. Such authority is independent of anyauthority granted to the State Treasurer under the Act.
 2. Under the Act, the State Treasurer is the executive officerdelegated the duty to act as the administrative officer for theBoard and has numerous duties spelled out in the Act. Among thosepowers and duties, the State Treasurer specifically has the dutyto administratively review all loan packages after approval bythe Board, and verify that the package in question may belegitimately funded within the constraints of the Act and theguidelines he has issued to implement the program, and that theborrower in question is in good standing with both the OklahomaTax Commission and the Oklahoma Employment Security Commission.
 3. The Board is subject to both the Open Meeting Act and theAdministrative Procedures Act.
 4. The language of 62 O.S. 88.4(A) of the Act authorizesthe State Treasurer to issue guidelines regarding his duties, asthe program's administrative and executive officer, to implementthe Act and its purposes, "in a manner similar to that of theAdministrative Procedures Act." However, this language does notpermit the State Treasurer to wholly ignore the requirements ofthe Administrative Procedures Act. Rather, the State Treasurer isrequired to issue these administrative guidelines in such amanner as would satisfy the objectives of the AdministrativeProcedures Act's mandates including but not limited to: priorpublic notice and opportunity to be heard, cost-benefit analyses,and availability of the guidelines by filing copies ofpromulgations with public record-keeping officials.
ROBERT H. HENRY ATTORNEY GENERAL OF OKLAHOMA
MICHAEL SCOTT FERN ASSISTANT ATTORNEY GENERAL DEPUTY CHIEF, GENERAL COUNSEL DIVISION